0UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

HENRY QUATTLEBAUM,
         Plaintiff,

v.                                                 Civil Action No. 2:05cv356

EARL INDUSTRIES, L.L.C.,
         Defendant.


ORDER AND OPINION


        This matter is before the court on defendant Earl Industries' Motion to Dismiss plaintiff's

claims under the Americans with Disabilities Act and the Age Discrimination in Employment Act.

After examination of the record, this court determines oral argument is unnecessary because the

facts and legal arguments are adequately presented, and the decisional process would not be

significantly aided by oral argument.  The court, for the reasons set out herein, **GRANTS** the

defendant's motion to dismiss.


I.      **Factual and Procedural Background**

        Plaintiff filed suit against his former employer, Earl Industries, to redress alleged violations

of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111-17, and the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621-34.  Plaintiff asserts that he was

discriminated against because of his disability and his age, and that he was wrongfully terminated

in violation of the ADA and ADEA.

        Plaintiff, who was 61 when he filed his complaint, suffered a seizure in September 2003 as

a result of a brain aneurysm and hypertension.  Plaintiff did not work from September 2003 until

March 3, 2004 when he returned to his position as "tool room attendant" at Earl Industries'

Victory Boulevard location.  Plaintiff suffered no medical or physical problems while on the job

between his return on March 3, 2004, and May 2004.  However, in May the defendant decided to

change the responsibilities of tool room attendants, requiring that attendants begin rotating across

four locations, for three months at a time,[1] in order to prevent the theft of tools.  Plaintiff

immediately expressed concern to his supervisor, Gregory Myers, about plaintiff's ability to rotate

to the other three locations that the new policy required.[2]  Myers instructed plaintiff to bring a note

from his doctor verifying his physical limitations.  Plaintiff informed Myers that plaintiff's doctor

had instructed him not to change job sites every three months.[3]  On June 24, 2004, Myers informed

plaintiff that he would be discharged.  During plaintiff's exit interview, Myers gave plaintiff a

form stating that "Plaintiff's medical restrictions would not allow the Plaintiff to work at all tool

room locations." Compl. ¶ 26.   Plaintiff also alleges that Earl Industries "replaced [him] with a

younger person." Compl. ¶ 28.

---

[1] There is disagreement between the parties as to whether the rotations were to occur
monthly or quarterly; however, this difference does not effect the analysis contained herein.

[2] Plaintiff's complaint is ambiguous with respect to whether he is alleging problems
traveling to locations other than Victory Boulevard, or alleging problems working at such
locations.  However, considering evidence in a light most favorable to the plaintiff, no inference
can be drawn in his favor relating to problems that he may have traveling to the other three
locations.  All four locations are located in the city of Portsmouth.  Although Plaintiff apparently
has no problem traveling to the Victory Boulevard location, the Navy yard location appears to be
even closer to plaintiff's home than Victory Boulevard.  Additionally, the other two locations are
apparently only approximately three miles from plaintiff's home.  The short distances to all tool
room locations was argued in defendant's motion to dismiss, however, plaintiff failed to dispute
such facts or offer any justification in his response for his inability to work at such locations.

[3] It is unclear from the complaint whether plaintiff actually presented a note or whether he
verbally relayed his doctor's instructions.

Plaintiff filed his complaint against Earl Industries for wrongful termination on June 13, 2005.   Plaintiff contends that "[f]rom the time of his return to work to the day of his termination, [he] was capable of performing the duties pertaining to attending to the tool room at . . . Victory Boulevard." Compl. ¶ 30.   On July 19, 2005, defendant filed a motion to dismiss and memorandum in support.   Plaintiff responded on July 27, 2005, and defendant filed a rebuttal memorandum on August 2, 2005.   Defendant contends that plaintiff does not qualify as disabled under the ADA, and even if he did, both his ADA and ADEA claims should be dismissed because plaintiff is not qualified to perform the job of tool room attendant.

## II.     Standard of Review

A complaint should not be dismissed for failure to state a claim for which relief can be granted under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989).   The court must "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations."  Eastern Shore Markets, Inc. v. J.D. Associates Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000) (citations omitted).  While the court must take the facts in the light most favorable to the plaintiff, the court is not bound with respect to the complaint's legal conclusions.  See Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991).

When analyzing the sufficiency of plaintiff's allegations with respect to a 12(b)(6) motion in an ADA or ADEA case, there is currently some disagreement within the Fourth Circuit as to what constitutes an adequate pleading.  The Supreme Court has recently held that a complaint need not establish a prima facie case because a "prima facie case . . . is an evidentiary standard, not a

3

pleading requirement." <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 510 (2002).  However,

interpreting <u>Swierkiewicz</u>, the Fourth Circuit has held that although a plaintiff need not "forecast

evidence," nor plead sufficient facts to prove her case, "as an evidentiary matter, in her complaint,

a plaintiff *is* required to allege facts that support a claim for relief."  <u>Bass v. E.I. Dupont de

Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir. 2003), <u>cert.</u> <u>denied</u>, 540 U.S. 940 (2003).  The Fourth

Circuit's position is that <u>Swierkiewicz</u> does not "remove[] the burden of a plaintiff to allege facts

sufficient to state all the elements of her claim." <u>Id.</u>

      Since the court of appeals ruling in <u>Bass</u>, district courts within the Fourth Circuit have

applied differing standards.  <u>Compare</u> <u>Cockerham v. Stokes County Bd. of Educ.</u>, 302 F. Supp. 2d

490, 495 (M.D.N.C. 2004) (applying the standard as set forth in <u>Bass</u> requiring that plaintiff allege

facts sufficient to state each element but noting: "By continuing to apply a heightened pleading

standard after <u>Swierkiewicz</u>, the Fourth Circuit is at odds with the Supreme Court's clear

pronouncement"), <u>with</u> <u>Fletcher v. Tidewater Builders Ass'n</u>, 216 F.R.D. 584, 589 (E.D. Va. 2003)

(applying the liberal pleading standard under FED. RULE CIV. PROC. 8(a)(2) and <u>Swierkiewicz</u>,

stating: "For purposes of a motion to dismiss, it is clear that Plaintiff need not state a prima facie

case under the ADA").

      This court declines to comment on the proper synthesis of the holdings in <u>Swierkiewicz</u>

and <u>Bass</u>, and instead follows the interpretation of  <u>Swierkiewicz</u> as adopted by the Fourth Circuit

in <u>Bass</u>.[4]  Applying such interpretation, this court finds that the plaintiff failed to state a claim on

_____

      [4] It is the role of this court to follow the Fourth Circuit's interpretation.  <u>Cockerham</u>, 302
F. Supp. 2d at 495; <u>see</u> <u>also</u> <u>Hart v. Massanari</u>, 266 F.3d 1155, 1175 (9th Cir. 2001) (stating that
"[a] district court bound by circuit authority . . . has no choice but to follow it"); <u>Odom v. South
Carolina Dep't of Corr.</u>, 349 F.3d 765, 775 (4th Cir.2003) (Luttig, J., dissenting) (arguing that
the court's failure to follow binding precedent "render[s] principled predictions as to the [law] in
our circuit   . . . all but impossible").

which relief can be granted under the ADA or the ADEA.  Additionally, as discussed below, this court notes that the first count of plaintiff's complaint, termination in violation of the ADA, fails under even the most liberal pleading standard.


## III.    Analysis

### Count I - Disability Discrimination in Violation of the ADA.

Plaintiff's wrongful termination claim under the ADA fails to allege sufficient facts to overcome defendant's motion to dismiss even though plaintiff alleges, and this court takes as true, that Earl Industries fired plaintiff as a result of his medical condition.  Rather, in order to state a claim under the ADA plaintiff must "allege facts sufficient to state all the elements of [his] claim." Bass, 324 F.3d at 765.  Furthermore, plaintiff's ADA claim should be dismissed under even the most liberal of pleading standards because the complaint fails to state that he has a disability within the ADA's definition, or that he was qualified for the job as tool room attendant.  Baird v. Rose, 192 F.3d 462, 467 (4th Cir. 1999); see also Fletcher 216 F.R.D. at 589 (holding that to survive a 12(b)(6) motion the complaint must "simply state" that the plaintiff was actually disabled).


### A.  Plaintiff's first count in his complaint fails to state a claim on which relief can be granted as the plaintiff fails to allege that he was "disabled" within the ADA.

Although the court accepts as true that plaintiff was terminated because his "medical restrictions would not allow [him] to work at all tool room locations," Compl. ¶ 26, in order to state a claim under the ADA the plaintiff must allege that his medical condition qualifies him as "disabled" under the ADA.  Settle v. S.W. Rodgers, Co., 998 F. Supp. 657, 661 (E.D. Va. 1998)

("The threshold issue, then, is whether plaintiff has alleged a 'disability' cognizable under the ADA."). A disability under the ADA can be alleged as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

**1. Plaintiff cannot establish that his medical condition, analyzed under 42 U.S.C. § 12102(2)(A), constitutes "a physical or mental impairment that substantially limits one or more of the major life activities of such individual."**

To qualify as having a disability under subsection (A) the plaintiff would have to allege: (1) that his hypertension and seizure resulted in a "physical or mental impairment"; (2) that working is a "major life activity"; and (3) that his impairment "substantially limits" his ability to work. See Sutton v. United Air Lines, Inc., 527 U.S. 471, 479-84 (1999); 29 CFR §§ 1630.2(h)-(j).

First, addressing the requirement of "physical or mental impairment," plaintiff's complaint fails to describe his alleged impairment in any detail whatsoever, but instead simply states that he had a seizure in 2003 as a result of a brain aneurysm and hypertension. Compl. ¶ 13-14.[5] The only detail of the impact of such condition was that plaintiff's doctor instructed him not to rotate to different locations due to his medical restrictions. Compl. ¶ 21-26. Although plaintiff's complaint may be deficient for lack of detail as it never states what his "medical condition" is, in an abundance of caution, this court declines to dismiss the complaint for failure to establish a "physical or mental impairment," especially when dismissal is proper under alternative grounds.

---

[5] Plaintiff does not even state whether his hypertension persisted after his seizure.

Second, the court determines that working is considered a major life activity under the ADA. Runnebaum v. Nations Bank, 123 F.3d 156, 170 (4th Cir. 1997) (en banc) (plurality opinion) (noting that "working is one of the major life activities of the ADA"), overruled on other grounds by Bragdon v. Abbott, 524 U.S. 624 (1998); Williams v. Channel Master Satellite Systems, Inc, 101 F.3d 346, 349 (4th Cir. 1996) (same), abrogated on other grounds by Baird v. Rose, 92 F.3d 462 (4th Cir. 1999); 29 C.F.R. § 1630.2(I) (defining major life activities as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working").

Third, although working qualifies as a major life activity, "the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." Sutton, 527 U.S. at 492. The Supreme Court recognized this requirement based on the EEOC's specialized definition of the term "substantially limits" when referring to the major life activity of working; the EEOC definition states:

> With respect to the major life activity of working–The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(I) (emphasis added); see Sutton, 527 U.S. at 493 ("To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice."); Corrigan v. Perry, 961 F. Supp. 132, 136 (E.D. Va. 1997) (granting summary judgment because plaintiff failed to provide evidence "addressing the extent of the job market" from which his impairment disqualified him).

In the present matter, plaintiff fails to allege in his complaint that his impairment

"substantially limits" his ability to work because he does not claim that he is unable to work in a broad class of jobs.  Furthermore, plaintiff does not explain his impairment in sufficient detail such that this court can reasonably infer that the impairment would prevent plaintiff from working in a broad class of jobs.[6]  Rather, plaintiff merely states in his complaint that he was fired from a particular job of choice, from a single employer, as a result of his impairment.  Because plaintiff fails to allege that his impairment disqualifies him from similar jobs in the job market as a whole, or even other tool room attendant jobs, plaintiff has failed to adequately plead that he has "a physical or mental impairment that substantially limits one or more . . .  major life activities." 42 U.S.C. § 12102(2)(A).  See Sutton, 527 U.S. at 490-91 ("[A]n employer is free to decide that . . . medical conditions that do not rise to the level of an impairment . . . are preferable to others, just as it is free to decide that some limiting, but not substantially limiting, impairments make individuals less than ideally suited for a job."); Halperin v. Abacus Tech. Corp., 128 F.3d 191, 200 (4th Cir. 1997) (holding the purpose of the ADA is to protect the "truly disabled" not to protect people from "all adverse effects of ill-health and misfortune"), abrogated on other grounds by Baird v. Rose, 192 F.3d 462 (4th Cir. 1999).

Although this court applies the pleading standard as set forth in Bass, the court notes that plaintiff's complaint fails to allege that he is "disabled" within the ADA's definition under any

---

[6]  As noted earlier, plaintiff provides practically no details about his impairment and does not even allege that he suffered from hypertension, or any other specific condition, after his seizure.  However, even if plaintiff alleged persisting hypertension, other districts have repeatedly held that hypertension does not qualify as a "disability" under the ADA. See, e.g., McIntosh v. Brookdale Hosp. Med. Ctr., 942 F. Supp. 813, 820 (E.D.N.Y. 1996); Aucutt v. Six Flags Over Mid-America, Inc., 869 F. Supp. 736, 744 (E.D. Mo. 1994).  This court does not find that hypertension could never be sufficient to establish a disability within the ADA, but rather that plaintiff has failed to allege that his hypertension rose to the level that qualifies as a disability under the ADA.

pleading standard.  In <u>Fletcher v. Tidewater Builders Ass'n</u>, 216 F.R.D. 584 (E.D. Va. 2003), the district court addressed a challenge to plaintiff's classification as "disabled" under the ADA, applying the liberal pleading standard under Rule 8 and <u>Swierkiewicz</u>.  <u>Id.</u> at 588.  The district court, in denying defendant's 12(b)(6) motion, noted that for the purposes of a 12(b)(6) motion plaintiff need not prove she was disabled, but merely must "state such facts."  <u>Id.</u> at 589.  The court found that the plaintiff met her burden by stating she was a "qualified individual within the meaning of the ADA" and because she "describes her condition and states that the side effects of the medication she takes to control her disease 'substantially limit a major life activity including, but not limited to, work.'"  <u>Id.</u> (quoting plaintiff's amended complaint).

Here, unlike the plaintiff in <u>Fletcher</u>, Quattlebaum fails to state that he is a qualified individual within the meaning of the ADA or that his medical condition substantially limits a major life activity.  Thus, Quattlebaum's complaint fails even under the Rule 8 and <u>Swierkiewicz</u> standard because plaintiff fails to even "state such facts" alleging a disability within the ADA. Furthermore, plaintiff's complaint fails to describe his condition with even minimal detail; thus, this court cannot infer that plaintiff's disability substantially limits a major life activity.[7]  Thus, although the pleading standard this court applies is the standard as set forth in <u>Bass</u> requiring the plaintiff to allege facts supporting all the elements of his claim, plaintiff's ADA claim fails under both the <u>Bass</u> standard and the liberal pleading standard applied in <u>Fletcher</u>.

---

[7] Contrary to the statements in <u>Fletcher</u>, here, plaintiff's complaint merely refers to the plaintiff as having a "disability," Compl. ¶ 33, and explaining that he suffered a seizure as a result of "a brain aneurysm and hypertension" Compl. ¶ 14, and that his doctor instructed him not to rotate job sites every three months.  Compl. ¶ 22.  The court has no further information on the severity or type of plaintiff's medical limitations.

**2.   Similarly, plaintiff does not qualify as disabled under 42 U.S.C. § 12102(2)(B) or (C)**.

For the reasons discussed above, plaintiff's medical impairment is not a disability under the ADA because plaintiff does not allege that his condition substantially limits him in any major life activity.  As a result, plaintiff has failed to establish that he is disabled, whether the theory he proceeds under is: (A) that he suffers from an actual disability under the ADA; (B) that he has a record of disability; or (C) that he was regarded by Earl Industries as being disabled.  42 U.S.C. § 12102(2)(A)-(C).

Considering subsection 12102(2)(B), "record of such an impairment,"[8] plaintiff claims in section III.A.2 of his response to defendant's motion to dismiss that plaintiff has a record of his impairment since its inception, and this record establishes his disability under the ADA.  This claim fails because as discussed, plaintiff has only pleaded facts that establish an unspecified medical impairment, not an impairment that substantially limits a major life activity.  Thus, plaintiff's documented medical history fails to establish a disability under the ADA because plaintiff fails to allege that his medical file documents an impairment significant enough to substantially limit his ability to work.

Next, considering subsection 12102(2)(C) "being regarded as having such an impairment,"[9] plaintiff claims in section III.A.2 of his response that he is disabled within the ADA because Earl

---

[8] The phrase "such an impairment" in subsection 2(B) refers to "a physical or mental impairment that substantially limits one or more of the major life activities of such individual" from subsection 2(A).

[9] The phrase "such an impairment" in subsection 2(C) refers to "a physical or mental impairment that substantially limits one or more of the major life activities of such individual" from subsection 2(A).

Industries regarded him as having such disability.  However, plaintiff's only support for this claim is that Earl Industries discharged plaintiff due to his medical restrictions.[10]   In order to succeed under subsection 12102(2)(C), plaintiff must show either that he was not impaired, and Earl Industries mistakenly believed that he had an impairment that substantially limited a major life activity, or, that he had a non-limiting impairment, and Earl Industries mistakenly believed that the non-limiting impairment limited a major life activity.  Sutton, 527 U.S. at 489.  In either situation, "it is necessary that a covered entity entertain misperceptions about the individual."  Id.

Here, plaintiff failed to allege that Earl Industries had misperceptions about plaintiff's medical condition, viewing it as more severe than it was.  On the contrary, plaintiff's complaint states both that Earl Industries asked plaintiff to rotate to different work locations and that defendant only discharged plaintiff after he "informed [defendant] of the doctor's instructions." Compl. ¶ 20-26.   If defendant thought plaintiff was substantially limited by his medical impairment it is unlikely that defendant would have asked plaintiff to rotate.  Furthermore, defendant only terminated plaintiff after becoming informed about plaintiff's condition through his doctor's advice; thus, no "misperceptions" existed.   Taking the facts as presented by plaintiff  in a light most favorable to plaintiff, the facts do not support any inference that defendant had any misperceptions about the plaintiff; thus, plaintiff cannot establish that a disability existed under 42 U.S.C. § 12102(2)(C).

> **B. Plaintiff's complaint fails to state a claim on which relief can be granted because the complaint fails to allege that plaintiff was qualified for his job within the ADA.**

---

[10] Plaintiff's complaint appears to contradict itself as it states that plaintiff's exit interview form provided by the defendant "stated that Plaintiff's medical restrictions would not allow the Plaintiff to work at all tool room locations." Compl. ¶ 26, and that "Defendant's June 2004 termination of Plaintiff was not based on any medical justification." Compl. ¶ 32.

Even if plaintiff's complaint was deemed to sufficiently allege that he was "disabled"
under the ADA, the complaint nonetheless fails to state a claim on which relief can be granted
because plaintiff does not allege that he was a  "qualified individual with a disability" under the
ADA.  Tyndall v. National Educ. Ctrs. Inc., 31 F.3d 209, 212 (4th Cir. 1994).  The ADA defines a
"qualified individual with a disability" as "an individual with a disability who, with or without
reasonable accommodation, can perform the essential functions of the employment position that
such individual holds or desires." 42 U.S.C. § 12111(8).  The code further notes: "For the
purposes of this subchapter, consideration shall be given to the employer's judgment as to what
functions of a job are essential" Id.  The Fourth Circuit Court of Appeals has clarified: "A job
function is essential if it 'bears more than a marginal relationship to the job at issue.'"  Rohan v.
Networks Presentations LLC, 375 F.3d 266, 279 (4th Cir. 2004) (quoting Tyndall, 31 F.3d at 213).

Once essential job functions are established, two questions remain to determine if the
plaintiff is otherwise qualified under the ADA: First, can the plaintiff perform all essential job
functions, and if not, would reasonable accommodations enable him to do so.  Tyndall, 31 F.3d at
213.   In answering these questions the burden is on the plaintiff.  Id.  However, for purposes of a
12(b)(6) motion, the court need not determine if plaintiff is actually qualified; rather, the court
must determine whether plaintiff has included in his complaint facts which allege that plaintiff is
qualified.

Here, plaintiff does not allege in his complaint that when he was terminated he was
qualified for the job of tool room attendant, nor does the plaintiff allege that he would have been
qualified if the defendant made reasonable accommodations.  Instead, plaintiff alleges only that he
was qualified to perform the job functions of tool room attendant prior to the imposition of Earl

Industries' policy to start rotating attendants.[11]  Furthermore, plaintiff admits in his complaint that

after such policy was implemented, that due to his medical limitations, he could not rotate between

job sites.[12]  When the facts, as alleged by plaintiff in his complaint, defeat an element of his claim,

dismissal is proper.  City Nat'l Bank of Florida v. Checkers, Simon & Rosner, 32 F.3d 277, 281

(7th Cir. 1994) ("We are not, however, required to ignore any facts set forth in the complaint that

undermine the plaintiff's claim.").  Therefore, plaintiff has not only failed to successfully allege

that he could perform all essential job functions of tool room attendant, but has affirmatively stated

that due to his medical condition he could not perform such functions.[13]  See Southeastern

Community College v. Davis, 442 U.S. 397, 406 (1979) ("An otherwise qualified person is one

who is able to meet all of a program's requirements in spite of his handicap.").

    Plaintiff also fails to allege that he could perform all essential job functions if defendant

---

[11] The complaint states: "From the time of his return to work to the day of his termination, Plaintiff was capable of performing the duties pertaining to attending to the tool room at the Defendant's Victory Boulevard location." Compl. ¶ 30.  However, defendant started requiring rotation to different locations and no longer had a job position for an attendant to work only at Victory Blvd.  Plaintiff never alleges in his complaint that the rotation was not an essential element of the job.

[12] As noted throughout this opinion, plaintiff's complaint fails to explain what medical conditions he had or why he was unable to rotate to different job locations.

[13] Although plaintiff states in his response to defendant's motion to dismiss that "Plaintiff maintains that rotation between locations was not an essential function of the tool room attendant," Resp. p.1, ¶ 1, nowhere in the complaint does plaintiff allege such.  Because "consideration shall be given to the employer's judgment as to what functions of a job are essential" 42 U.S.C. § 12111(8), and a function should be considered essential if it "bears more than a marginal relationship to the job at issue," Tyndall, 31 F.3d at 213, even considering the record in a light most favorable to the plaintiff, this court can only infer that required rotation to avoid tool theft is an essential element of the job of tool room attendant.  If plaintiff believed otherwise he should have alleged so in his complaint or sought to amend his complaint to include a simple statement of fact to support the conclusory statement: "Plaintiff maintains that rotation . . . was not . . . essential."  Resp., p. 1 ¶ 1.

made "reasonable accommodations."  The only reference to accommodations in the complaint is a paragraph which states: "When Plaintiff informed the Defendant that he could not rotate among the several locations, the Defendant refused to accommodate the Plaintiff."  Compl. ¶ 31.  Read in context, this statement appears to mean that the "accommodation" defendant refused to make was to allow the plaintiff to continue working only at the Victory Boulevard location.[14]  This is not properly considered an accommodation if the job of tool room attendant required rotation.  Accommodations would instead be reasonable changes made by Earl Industries that would allow the plaintiff to rotate.  However, interpreting the above statement to mean that defendant refused to make accommodations that would allow plaintiff to rotate, an interpretation in a light most favorable to the plaintiff, the complaint still fails to state a claim as it fails to state what accommodations were refused and fails to allege that the refused accommodations were reasonable.

### Count II - Age Discrimination in violation of the ADEA.

Under the ADEA, which covers plaintiff's age discrimination claim, it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).   A plaintiff may establish a claim for a violation of this statute in two ways.  First, a plaintiff may present direct or indirect evidence of the discriminatory

---

[14]  Plaintiff's response to defendant's motion to dismiss confirms the court's interpretation that the "accommodation" plaintiff referred to in his complaint was allowing plaintiff to forgo rotation and work only at the Victory Blvd. location.  See Resp. p.1, ¶ 1. ("Defendant terminated Plaintiff's employment rather than make the reasonable accommodation to Plaintiff to continue as tool room attendant without rotating locations.").

animus alleged.  Brinkley v. Harbour Recreation Club, 180 F.3d 598, 607 (4th Cir. 1999).  Absent

such evidence, a plaintiff may establish a claim based on the burden shifting scheme as set forth in

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny.   The first step of the

McDonnell Douglas scheme requires a plaintiff to establish a prima facie case of discriminatory

action, and the prima facie case is then viewed as giving rise to a presumption of discrimination.

Id. at 802.  Here, the plaintiff has not presented any direct or indirect evidence of a discriminatory

animus on the part of the employer, and therefore must rely on setting out a prima facie case.

Although at this stage in the litigation the plaintiff is not required to provide evidence

proving a prima facie case exists, plaintiff must at least allege all elements, whether he does so

directly, or provides sufficient details to establish an inference of the existence of such elements.

Bass, 324 F.3d at 765 (holding that Swierkiewicz does not "remove[] the burden of a plaintiff to

allege facts sufficient to state all the elements of her claim").  The elements plaintiff must allege

directly or inferentially in a case under the ADEA are: (1) plaintiff was over 40 years old; (2) he

was qualified for the job; (3) despite his qualifications he was discharged; and (4) after his

discharge he was replaced by someone who was outside the protected class or was "substantially

younger."  Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998).[15]

Here plaintiff's complaint fails to allege that he was otherwise qualified for the position of

---

[15] Element four as listed in Causey was "following his discharge, he was replaced by someone with comparable qualifications outside the protected class." Causey, 162 F.3d at 802. However, in a footnote to element four, the Fourth Circuit noted the Supreme Court's rejection of strict adherence to the requirement that the replacement be "outside the protected class" and suggested instead that the test applied be that the replacement was "substantially younger." See O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312-13 (1996); Causey, 162 F.3d at 802 n.3.

tool room attendant.  As discussed above,[16] considering the facts as presented by plaintiff, the facts

not only fail to allege that plaintiff was qualified, but instead indicate that plaintiff was not

qualified for the job at Earl Industries.  Specifically, the plaintiff admits in his complaint that his

medical condition prevented him from rotating among the different tool shop locations.

Furthermore, plaintiff does not allege, directly or inferentially, that he was replaced by

someone outside the protected class (under 40), or someone who was "significantly younger."

Instead, the only nonconclusory statement in plaintiff's complaint relating to age discrimination is:

"Defendant replaced Plaintiff with a younger person." Compl. ¶ 28.[17]  This statement is

insufficient to establish that there is a claim on which relief can be granted.  Gable v. FirstEnergy

Corp., No. 3:04CV7757, 2005 WL 927122, at *2 (N.D. Ohio Apr. 18, 2005) (granting defendant's

motion to dismiss for failure to state a claim even though plaintiff was proceeding pro se because

plaintiff's complaint failed to allege he was in the protected class or that his replacement was more

than six years younger).[18]  Because plaintiff failed to allege in his complaint both that he was

qualified for the position as tool room attendant and that he was replaced by someone who was

---

[16] See section B of Count I.

[17] Plaintiff must allege each element of an ADEA claim and cannot establish his claim merely through conclusory statements such as those in ¶ 38 and 39 of his complaint.  Duckworth v. State Admin. Bd. of Election Laws, 332 F.3d 769, 775 (4th Cir. 2003) (finding conclusory statements about discriminatory effect insufficient to state a claim for relief "by virtue of their conclusory nature").  Here, ¶ 38 of plaintiff's complaint states: "Plaintiff's age has a determining factor in Defendant's decision to terminate the Plaintiff."  ¶ 39 states: "Defendant knowingly and willingly discriminated against the Plaintiff on the basis of his age, in violation of the ADEA."

[18] The Sixth and Seventh Circuits have recently established bright line rules for analyzing the standard "significantly younger."  See Grosjean v. First Energy Corp., 349 F.3d 332, 340 (6th Cir. 2003) (finding absent direct evidence of age discrimination, "an age difference of six years or less between an employee and a replacement is not significant"); Hoffmann v. Primedia Special Interest Publ'ns, 217 F.3d 522, 524 (7th Cir. 2000) (finding "a difference of less than ten years presumptively insubstantial").

either outside the protected class or significantly younger, plaintiff has failed to allege each element of a prima facie case.  As a result, Count II of plaintiff's complaint, alleging a violation of the ADEA, fails to state a claim on which relief can be granted.

## IV.  Leave to Amend Plaintiff's Complaint is Improper

Although the plaintiff has failed to request leave to amend his complaint, based on the analysis conducted in considering defendant's motion to dismiss, even if the plaintiff requested leave to amend, it would not have been proper on the information contained in plaintiff's complaint.  Specifically, there are two key admissions which make leave to amend improper.  First, plaintiff admits in his complaint that, when terminated, he was able to work at Victory Boulevard.  Thus, plaintiff is not limited in the major life activity of working, and therefore, plaintiff can have no valid claim under the ADA.  Plaintiff cannot amend his complaint to allege he is limited in a major life activity without contradicting facts alleged in his complaint.  Second, plaintiff admits that, when terminated, he was unable to rotate among the four tool shop locations as required by his employer.  Thus, his complaint establishes that he was not qualified for the job of tool room attendant, and as a result, plaintiff can have no valid claim under the ADA or ADEA. Plaintiff can not amend his complaint to allege he is qualified as tool room attendant without contradicting facts alleged in his complaint.

Additionally, the court notes that although plaintiff is represented by counsel, he has failed to allege even the minimal facts required to overcome a motion to dismiss.  Plaintiff has also failed to seek leave to amend after defendant's motion to dismiss raised several deficiencies in plaintiff's complaint.  Furthermore, plaintiff's response to defendant's motion to dismiss both failed to cite a single case and failed to attempt to distinguish case law presented by the defendant.  The plaintiff

17

has had ample opportunity to allege facts sufficient to state a claim, but has failed to do so. Moreover, an analysis of the applicable law has revealed that facts alleged in plaintiff's complaint preclude plaintiff from making a good faith amendment that would be sufficient to state a claim under the ADA or the ADEA.

## V.     Conclusion

The court concludes that the plaintiff has failed to set forth in his complaint a claim on which relief can be granted.  Furthermore, the court finds that the facts established by plaintiff in his complaint have shown the absence of a claim on which relief can be granted.   Even if plaintiff did seek to amend his complaint, his ADA claim fails and cannot be amended in good faith because plaintiff's complaint that he is not limited in the major life activity of working, and that he is not otherwise qualified for the job at Earl Industries.  Similarly, plaintiff's claim under the ADEA fails and cannot be amended in good faith because plaintiff admits that he was not otherwise qualified for the job at Earl Industries.

For the reasons discussed above, the court **GRANTS** the defendant's motion to dismiss for failure to state a claim with prejudice.

The Clerk is **REQUESTED** to mail copies of this Order to counsel for the plaintiff and for the defendant.

**IT IS SO ORDERED.**

_____
                                /s/
                    Jerome B. Friedman
                    UNITED STATES DISTRICT JUDGE

September  2nd  , 2005
Norfolk, Virginia